We'll turn to Vullo v. Barron. Good morning, Your Honors. May it please the Court, my name is Paul Niehaus of Kirshen Niehaus PLLC. I am here on behalf of Defendant Appellants Stephen Barron and Condor Capital Corporation. For decades, this court has warned against the potentially devastating consequences of unfettered equity receivers. We are now at the end of a process that has seen an equity receiver accomplish what the New York State Department of Financial Services could not. The seizure and liquidation of a defendant prior to any judgment on the merits. And while this court cannot resurrect Condor, and it's already ruled that it cannot unwind the transactions that liquidated Condor, it can grant the relief requested in this appeal and restore a modicum of justice to the defendants. We're specifically asking for five reliefs, Your Honors. One is that this court vacate the district court's order approving the receiver's $7 million in fees and his counsel's $3 million in fees. We're asking that the court vacate the district court's order releasing and absolving the receiver and various third parties from all liability. We're asking that those decisions be remanded to a different district judge. We're asking that this court find that the receiver improperly wound down and liquidated Condor. And we're asking that this court renew its previous warnings against using equity receivers to liquidate companies, particularly solvent companies. Unless a member of the panel has a question regarding the facts underlying the matter or the procedure below, I will skip ahead to our legal arguments. The ultimate effect of the district court's errors below was to impose impermissible penalties on defendants. In conducting the case, the district court made a number of reversible errors as detailed in the brief. The ultimate effect of these errors was to impose impermissible penalties on the defendants. We start from the principle that equitable relief, such as a receiver, must be limited to remedial relief. It must not be a penalty assessment. Here, the penalties for the alleged violations are set forth in section 1055A of the Dodd-Frank Act, and sections 309 and 408 of the New York Financial Services Law. They provide for monetary fines, and they provide for certain specific equitable relief. But notably, nowhere in these sections does it authorize the termination, wind down, or liquidation of a defendant, even as ultimate relief, much less as an interim sanction to be imposed by a receiver. But here, the hurried sale of Condor's assets and termination of the company imposed massive additional penalties on the defendants. Those came in the form of lost revenues, lost future profits, millions of dollars in unnecessary fees for the receiver and his counsel, the transfer of tens of millions of dollars in value to third parties, and of course, the ultimate destruction of the company and the loss of over 100 jobs in connection therewith. These penalties not only appear nowhere in the statutes, but they impose penalties that violate the excessive fines clause of the Eighth Amendment. The touchstone of the Eighth Amendment is proportionality. The forfeiture must bear some relationship to the gravity of the offense. Here, a fine of $3 million was ultimately imposed upon Condor. At the same time, hundreds of millions of dollars in value was lost or destroyed under any consideration of proportionality that is not a proportional penalty. The district court made a number of specific errors. It applied the wrong standard in granting the preliminary injunction. It improperly permitted Wells Fargo to intervene in an enforcement action. And it provided insufficient due process at a number of different points throughout the proceedings. The most egregious violation of due process came in connection with what were called remediations that the receiver performed. What do you say to the fact that your client ultimately consented to the judgment? He signed a consent judgment. He was counseled, wasn't he? He was indeed, your honor. So he consented to this. He did not consent to this. Litigate something he agreed to. No, what he consented to, your honor, was the entry of a $3 million fine and the future liquidation of Condor after it had already been destroyed. All of the prime assets had already been sold off. The company had functionally gone out of business. It hadn't issued a new loan in eight months. Its workforce was devastated. All the prime assets were gone. What he was being asked to do was salvage what he could out of what had already been destroyed. He didn't have to consent. He didn't have to consent. He could have contested it. He could have raised all these claims. He did raise, I'm sorry, your honor. But he didn't. He did raise with the district court the fact of the- He didn't raise them on appeal. Well, your honor, I agree with you that he signed- But he consented to it. No, he did not consent to it. Would he consented? Your honor, what- I have a different understanding of the word consent. The consent judgment- You're claiming it was coerced? I'm not saying that it was coerced. What I'm saying is that his company had already been destroyed by the time the consent judgment was entered. He has a factory, he has a house, whatever metaphor you want to come up with. It has already had its foundation ripped away. The workers have been dispersed. The court, he then was allowed to preserve what value remained in the company after it had already been functionally destroyed. And that's the real issue here. Now, he didn't consent to that earlier destruction. What he consented to was a $3 million fine and agreed that going forward, the company would not be resurrected. What he didn't do was ratify the actions that had taken place before. But, just to- Why doesn't he sue somebody? Well- Wait, no, you just wait a second. Sure. You stand up here and you tell us all the terrible things that the receiver did and, oh, I destroyed the company, all this stuff. Why don't you sue him? Because you can't. You know you can't because you've got a consent judgment. And you know you can't. So, it's disingenuous for you to stand there and say something that's patently wrong and has no support in the law. Your honor- It borders on frivolous, if you ask me. Your honor, the reason- Rule 11 here, too. It borders on frivolous. So, tell me, why didn't you sue? Your honor- Because you couldn't. Could you? We are barred from suing by the order of the court that discharged the receiver that was issued on November 22nd, 2016. That is an order that we are appealing from. We believe- And they wind it down. That's correct, your honor. Now, this receiver received $7 million in fees for operating the company. This receiver wound the company down because one of your complaints is that the receiver never got the loan machine working again. The receiver never ran the company at all. The receiver liquidated the company. Your honor, the receiver can't have it both ways. He can't either claim that this was a very difficult situation for which he was entitled to earn $7 million and that all he did was liquidate the company. If all he did was liquidate the company, he could have handed that over to an investment banker and said, give me the best price. He didn't need to charge $80,000 a week to liquidate the company. He didn't need to charge $40,000 a week for events occurring after every asset of the company had been sold. He was operating the company, and we have a perfect example of how that now comes to rest. Last week, we received an indemnification notice from one of the parties who purchased Condor's portfolio, saying that Condor is responsible to indemnify it for acts that allegedly occurred during the receivership. Now, if the receiver was running the company, and he certainly was operating the company, notices were going out, refunds were going out, money was coming in, bills were going out, and he is liable. I'm sorry, Condor is liable to indemnify these folks, then clearly the receiver has some potential liability there. If this happened on his watch, he should be responsible on that score, which is why we believe that that particular part of the order should be vacated. Thank you. I'm just going to adjust for a second. May it please the court, Judith Vale for the Superintendent of Financial Services. Barron and Condor entered into a consent judgment with the superintendent, in which they admitted to stealing funds from vulnerable loan consumers, lying to the consumers and regulators about the theft. And then also failing to protect consumers' personal information, even though Condor had misleadingly stating that it would protect that information, and also charging illegal interest rates. In that consent judgment, Barron and Condor agreed that the receiver would sell all of Condor's remaining loans and end the company with the profits of that sale going to Mr. Barron. And they also agreed to cooperate in effectuating that sale and not to interfere with the receiver. Despite Barron's every effort to undermine the sale that he had agreed to complete, the receiver closed the sale in February 2014, relinquished Condor's loans, sorry, relinquished the licenses to operate Condor, and wound down the business. Barron ultimately received a little more than $80 million from that sale. Seen in this context, the current appeal is precluded by the consent judgment, largely moot and entirely meritless. This is an attempted end run around the settlement that Barron and Condor entered into. The point of entering into the consent judgment is to end the litigation, not to keep re-litigating issues from before the consent judgment. An argument that you can keep re-litigating issues from before would just eviscerate the whole point of the consent judgment to begin with. The issue of how much compensation the receiver is fair game on an appeal. Correct, yeah, we don't contend that the fees issue is moot. Very well be fair game on appeal, and he seeks to have the receiver held personally responsible with regard to any claims that he asserts during the operation of it. Well, the release language that was put into the final order in this case was entirely appropriate in context of this case. Because Barron hasn't identified any viable claim that he could possibly bring against the receiver that isn't precluded at this point by the consent judgment or res judicata because he's already raised all of these issues with the district court. They've already been litigated and he voluntarily withdrew his appeal, his prior appeal, which tried to raise many of these issues. It's seen in that context the release language is really a reaffirmance in this case of the consent judgment and the permanent injunctive relief that has been issued against Barron. And Barron and Condor don't have any rights to raise some potential third party's claim against the receiver. I mean, the 959 language that he tries to invoke here is meant to provide some third party, maybe a loan consumer of Condor with the potential to bring a claim, not Barron. And even if the court was to look at this, I mean, everything is moot at this point except for the fees issue. And even if the court was to look at the merits here, I mean, the story that Barron and Condor are telling is false. The first sale was done pursuant to the preliminary injunction. It did not liquidate the company. It paid off a massive $250 million loan that Condor had taken out and that they admitted needed to be paid. And it left the company with a more than $200 million portfolio with which to try to resurrect the business and the basic compliance procedures in order to protect consumers and find new financing. And then while that process was going on and while the receiver was trying to rehabilitate the company, Barron and Condor agreed to sell the entire company and end this litigation. And there's really nothing more to the merits of this case than that. The release language, again, like I said, we think it is appropriate here. It's essentially similar to a filing injunction that the court had already issued in this case as part of its sale order. It had already said that Barron can't sue to upend the sale that he agreed to effectuate. And all of these claims, trying to go back in time, are still just doing just that. He's still trying to relitigate a sale that he agreed to effectuate. And the court reasonably decided that Barron doesn't have any right to do that. And that protecting the receiver for the actions that he did, in not operating the company in the normal course, but in fulfilling his duties under the preliminary injunction. And under the consent judgment, there's no ability to sue for that. I mean, that's a perfectly reasonable decision that the district court made, especially considering the litigious conduct that had gone on to date. We would ask the court to affirm. Thank you very much. Good morning, my name is Mark Powers from Baker Hostetler. We represent the former receiver in this action, Dennis O'Connor, the appellee. Let me immediately address, that was raised by you, Judge Wesley. The two decisions that you referenced indirectly are the, in our brief, is the Langenton v. Katchner 2016 decision, which says specifically that you must preserve and consent judgment issues. There's nothing in that consent judgment from 2014 that preserved the issues that he's raising now, which all predate. The second case we cite to you by this court from 1997 is AGV Paramount Communications, which says that settlement causes decisions predating the settlement unreviewable. So many of the issues that weren't raised have in fact been decided in our moot or at this point in time. I will note that this is the fourth appeal, fourth time I'm here before this court relating to this particular lawsuit. And as discussed in our brief, at this point there were really only three primary issues that Mr. Niehaus raises as five, one being that Judge McMahon improperly allowed the receiver in the fall of 2004 to wind down and liquidate. Even though the record shows that at that point in time there were no employees at Condor, Mr. Barron had terminated them at that point in time, and the primary lender, Wells Fargo, was no longer willing to finance the loans. And in addition, at that point in time, he had ultimately entered into a consent judgment. So all the rulings by the judge that predate that are really unreviewable at this point in time from our belief. The second is that Judge McMahon allowed the receiver in my law firm to receive exorbitant legal fees. Well, first, as noted in the brief on a factual basis, the legal fees for Mr. Niehaus and Mr. Barron exceeded ours, and they were in there for a year. We were in that case three years due to contentiousness and litigiousness of Mr. Barron throughout the course of this. I also will note that the pre-suit injunction and releases that Chief Judge McMahon allowed were proper. Barron's failure to obtain the injunction and releases at that time, or object to them, waived his right to now object in this court. We put in our final injunction to the court, discharging the receiver, these provisions. There was no papers in opposition put in by Mr. Niehaus. That included the release language? Correct, it does, specifically. Now, I'm sorry. I'll ask you a question. Sure. So at its core, this appeal, I think you hit it right on the head, Judge, is all about after Mr. Barron's $15 million to sue people, he's looking for an opportunity by undoing the injunction, ultimate injunction, to turn around and sue the receiver and perhaps others for the sport of it. Because now he can, he can afford to. And I would ask this court not to countenance this, because everything is gone. This is our fourth time here. Let's put this all to bed for the final time, hopefully. Is there any objection to the receiver's fees in front of Judge McMahon? Early on in the case, that predated the consent judgment. From time to time, Mr. Barron would say they were unreasonable. We weren't even in the case yet, Baker Hosteller, okay? The receiver, as to that, yes. Mr. O'Connor would put in from time to time on, I'd say, periodically, monthly, or every few months, reports that identified his fees, how they were calculated, and they would put in when he had paid us the amount of our fees. Once in a while, there would be letters by Mr. Niehaus or other counsel that predated him, objected to them as excessive. The court analyzed it and said, we find it to be reasonable. We couldn't find, we had some trouble finding in the record. There were instances where Judge McMahon was approving fees, where she would make an endorsement on the first page. And there would be one or two pages behind that, where there were itemizations of the fees. But it seemed as if there were other pages that were left off. And we looked through CMEC up and we couldn't really find that. Were each of the receiver's fee applications, I realize that they were billing on a weekly basis as opposed to an hourly basis. Yes. But were each of those applications accompanied with some form of detail in terms of the things that were performed or the types of activities that were performed during that particular week? So that's a really good question. Because before we really got involved, Baker Hostetler, I believe the practice by Mr. O'Connor was to submit the letters directly to the court via VFAX. And they weren't necessarily filed. When we got involved with the case- That explains the early ones where we only see the first page. Right. And then- We always filed the approval on the first page. Right, and then when we got involved and were asked to be brought in by Mr. O'Connor because it started getting very contentious and he no longer could rely upon Kat and Moochin, who equally billed the same amount as us, by the way, for their few months in there. We then said, no, not just send them in by fax, but let's also file them. Okay, did I, okay. Now, as it relates to the issue, let me address the issue about the, obviously the district court judge that appoints an equity receiver under the Barton rule has the right to say, no, you can't sue them unless you come back to us. Which is effectively what we have here. The exception that has been raised by Mr. Barron as a basis for getting around that by saying he was continuing the business, there's no merit to it. As indicated, there were no employees for purposes of originating new business. By the time of the consent judgment, it was all about liquidation. And even before that point in time, as the record reflects, Mr. O'Connor had put in reports to the court that said, wait a second. There have been additional discovery of violations of state and federal law applicable to the running of this business. I can't even turn around and do the business any further until we kind of get this cleaned up. And so, it really was all about a clean up, dealing with what was going on, and then liquidating the business in accordance with the consent. As a, yes. Your brief expresses your agitation over the litigation of your opposing counsel. And you refer to an anti-suit injunction against Barron on one occasion. What's the status of that? The status, Your Honor, is that it's in the final judgment by the court discharging the receiver. And so, that's where it is. There's an injunction in there. So, to do anything further to try and sue the receiver, he would have to go back before Judge McMahon and get permission. Which really is the right way to deal with that here, because she is in the best position to understand that all these issues have been dealt with before. The reasonableness of what occurred here. The one other thing that Mr., if I may, the one other thing that Mr., that was raised, which I do want to address since it kind of was outside the record. Arnie's identification notices he's now getting for Condor, if I may. The asset purchase agreement with CALS, which is where there are now some going on, went right before the judge. We had a full day hearing, among other things. A full day hearing before District Judge McMahon in December of 2015. We were both there for that purpose. And after that full day, all the issues relating to the terms of the asset purchase agreement, which Mr. Niehaus had, were specifically addressed, and then thereafter she issued the anti-suit injunction. So he was aware of the identification provisions that were in there. They were negotiated in good faith by the receiver. It was the best deal he thought he could get at the time. And as a result of that, Judge McMahon ruled it was reasonable. And I think this was the best job that he could get under the circumstances. Just like he complained about the fact that he only got 15 million of the 60 million because there was a different cutoff date. All those issues were addressed during a full hearing, where everyone had a full and fair opportunity to have live witnesses and oral argument. I guess, I don't know if I have any more time here or not. I think I'm over, but whatever you'd like me to otherwise address. I think I've addressed the primary issues of releases, anti-suit injunction, and the legal fees. Thank you. Very briefly, this is the fourth time we're in front of this court. And at no point have any of the appeals been ruled on on the merits. Mr. Barron has been told that his appeals were moot, that the court had no power to do anything. And that regardless of what had occurred before. One was withdrawn by your client. One was withdrawn, that's true, Your Honor. That is true, but for example, the deal that was just referred to by my colleague here. The circuit's told Mr. Barron, we can't tell you whether the deal was good or not. All we can tell you is since we can't offer you any relief, your appeal is being denied. What we're asking for today is simply that this court provide Mr. Barron the little pieces of justice that are left to him. 959A cannot be unilaterally overruled or ignored by a district court judge. 959A specifically provides that where a receiver is being sued in connection with carrying on the business. And this indemnification thing that I referred to is exactly that, carrying on the business. A group of consumers is claiming that notices that were sent out to them during the operation of Condor by the receiver are improper. That is exactly what 959 is designed to address, and Chief Judge McMahon can't simply overrule that. I wanted to briefly address also the notion that he wasn't carrying on the business. $5 million was paid out to employees during this period. Mr. Barron hadn't fired all the employees. The sales people had to be terminated because there was no loan origination. But the other 60 people were there sending out notices, collecting checks, working the loan portfolio. That is an operation of the business. And finally, we had a discussion about the fees that were paid to the various attorneys. Number one, there is no evidence whatsoever in the record and never was any evidence submitted of the attorney's fees. Those were submitted as expenses by the receiver. We don't have anything on that score. The fees that were submitted by the receiver were these two and three page summaries that showed weekly expenses, which we believe are improper under these standards. And to the extent that Mr. Barron ran up some legal fees that were approximately equal to those of the receiver, Mr. Barron was the defendant. That's kind of his right. His right is to defend himself against the charges that are being made against him. It's not necessarily appropriate for a receiver who is supposed to receive, quote, moderate compensation only. Thank you. We'll reserve decision.